All right. The first case on the calendar this morning is Martin Ventress et al. v. Japan Airlines et al. And I believe Mr. Ventress is standing by by telephone if we need to speak to him. But I understand Mr. Louise is here and ready to go. Very well. Step to the podium and you may proceed when you're ready. Yes. No, no. He's standing by. I understand that if we need to talk. And just so your Honors are aware, may it please the Court, my name's Sean Louise and I represent the plaintiff Jack Crawford. However, I don't represent Mr. Ventress with either of his two appeals. I just wanted to make sure that that was clear. We understand that, Counsel. Okay. Thank you, Your Honors. In this case, there's been a very interesting use of the treaty with Japan and America that was put forth in 1953 that it was never intended for. And the reason it was never intended for, this was intended to allow Japanese nationals to come into America with management positions. And in this case, there's nothing in the record that Mr. Crawford was ever replaced with a Japanese national. And even assuming that there is a, that Mr. Crawford is a technical expert, when you look at the language of the cases that was cited by Mr. Brower in the original opening and reply briefs, it makes clear that it's meant to allow free commerce between Japan and America. And in 1953, with the cases cited, even goes into the language that Japan actually objected to the treaty. And it was the people that were on the commission that put forth the language that they wanted to allow free trade. And I think it's important maybe historically to remember the context of which this arose. This was shortly after World War II. It ended 1945, 1953, this treaty was to go into effect. And if you think about what we've learned from history in World War I, with the Versailles Treaty, Japan was, I mean, excuse me, Germany was basically crushed with its economy. And they were punished so bad, unproportionally to the other countries involved in World War I, that the Third Reich and Hitler rose to power. So based on that, in history, the United States, after defeating Germany and Japan with World War II, didn't want to make the same mistake and crush their economy. They wanted to build them up. And based on common knowledge, it's quite apparent that it's been done. So... Kennedy. So now that you've transferred over, transferred the case over to Hawaii, what's your contention with respect to local law in California? I would believe that since the defendants asked for it to be transferred to Hawaii for venue, then the venue should control and we should be under Hawaii law, not California at this point. Well, would Hawaii law apply at all, or does treaty law apply? Well, the treaty law doesn't discuss any of the counts. When you look at the treaty that's included in the excerpts of record, all it discusses is free trade, but it doesn't discuss anything about choices of forum for litigation, it doesn't discuss choice of law for litigation. So is workmen's comp out the window, or anything relating to worker rights? No. And the important distinction is that the treaty does allow Japanese nationals to be placed in managerial positions, but even the treaty language itself says it's to prevent right within the four corners of the document, it's to prevent... That's a separate question from what Judge Beezer is asking you. The question is whether or not if there are workers' compensation remedies that were available, those remedies bar a tort claim such as intentional infliction of emotional distress. That doesn't have anything to do with the treaty, does it? Okay. Well, the... When you look at the decision by Judge King in denying the motion to amend the complaint, even he said that under Hawaii law, the Hawaii Supreme Court has stated that the exclusivity provision of workers' comp does not bar a cause of action for intentional infliction of emotional distress. Because that's a tort. So under Hawaii law, Mr. Crawford's tort claims would be allowed to proceed, notwithstanding... What if we send the case back to California? We say the transfer was wrong. Then what law applies? If it was sent back to California... That's where it started, wasn't it? Yes. However, it would be manifestly unjust to transfer it back to California. Well, I'm only licensed in Hawaii. Mr. Crawford wouldn't be able to use me. The defendants asked for it to be transferred and they got their way. And as they said, all the witnesses are Hawaiian Aviation Contract Services, a Hawaii corporation, so most... Was this in California originally? Oh, no, Your Honor. I'm the fourth or fifth... I say you. I'm referring to the plaintiffs. I mean, the action was originally... The forum was their choice, not the defendants' initially. Yes. But we've never raised an appeal that we objected to the choice of forum. Did the defendants waive? Yes. Well, or does Mr. Ventress still insist that the venue is improper in Hawaii? Oh, he does, yeah. Yeah. I mean, there's a difference here between apparently Mr. Crawford's position and Mr. Ventress on this issue. Right. And I only represent Mr. Crawford, so... I understand that. So you really can't answer the question with respect to Mr. Ventress's position? That's correct. Mr. Crawford has definitely waived the right to be heard in California because it was never raised... Okay. And Mr. Crawford is not asserting that Hawaii is an improper venue. No. And it was never raised, opening brief, not raised now on argument. We wish to stay in Hawaii. And if it's necessary, the case can be severed, because if Mr. Ventress wants California, let him have it. But we want Hawaii where it is. Are you claiming it was error to segregate the issues and send the employment contract to arbitration? No, Your Honors. Not as far as it concerns. I'm not involved with that appeal either. Mr. Ventress appealed the... His case, yes. Yeah, HACS, the aviation contract. But... Mr. Crawford is not participating. If the arbitration goes forward, he won't participate in the arbitration? No. If this was to go forward, there would be a litigation in Hawaii Federal District Court against the two Japanese corporations, Japan's Airlines and Japan Airways. However, the arbitration against Hawaii Aviation Services, it's already been severed, is going to go forward against, it's going to be Mr. Crawford versus Hawaii Aviation Services, but that's a separate, that's going to be an arbitration. Why are you not objecting to that? You're not raising that as a... No, Your Honors. We're fine to arbitrate with Hawaii Aviation Services, because the case law from the United States Supreme Court is crystal clear. If you agree to arbitrate, you must arbitrate. Why wouldn't it be most efficient to have all the claims decided in the arbitration? If you win, and we reinstate Japan Airlines in the case, there is a strong suggestion in the papers that Japan Airlines is the true employer here. And if that's the case, and there is a valid arbitration clause, then presumably Japan Airlines would also be participating along with HACS, whatever that stands for, Hawaii Aviation Contract Services. They'll be participating along with HACS, and they'll be participating in the same arbitration, so why would we want to split the litigation and have Japan Airlines go forward in federal district court while HACS goes forward in arbitration? That doesn't make any sense. Well, if the court was to do that and enforce them, the only thing is I, the thing I would say is that when you look at the contract between Hawaii Aviation Services and Mr. Crawford, they agreed to go to arbitration, and they're going to go to arbitration, but the two Japanese corporations never did. Well, they were gone from the case by the time the arbitration award was entered, were they not, Counsel? Well, they waived their right to go to arbitration, and the reason is because they chose to file motions to dismiss the claims against them, rather than filing a motion to stay the federal court action pending arbitration. Well, if we assume that they're back in and the treaty doesn't bar it, is in order for them to go to arbitration, the order to arbitrate appealable anyway? Well, in order to arbitrate is a final appealable order, but Mr. Crawford has not appealed that. And the ---- And neither has Mr. Ventress. Well, I don't represent Mr. Ventress. And he has made a point in his brief about that, but that doesn't affect your case. Yes. And just to be clear, the two Japanese corporations have never filed a motion. They could have filed a motion, they waived it, 12C, Federal Rules of Procedure. If you don't raise an affirmative defense, it's even questionable when you look at the answer. Sorry, Counsel. They moved to dismiss, and the district court granted the action and dismissed them from the case. Well, what do they care about what happens with the arbitration? Well, if they wanted to depend on ---- it would be manifestly unfair to let them have an arbitration proceeding now because they chose how to proceed and they chose rather ---- But they won. Yeah. Why would it be unfair if we reinstate them to the case to give them an opportunity to do whatever they're going to do with regard to the arbitration issue, either move to stay the litigation in federal court, pending the outcome of the arbitration, so they can participate in it, or file some sort of a motion to convince the district court that they should not be compelled to arbitrate because they're not the employer? Well, here's the problem with that. They never did file a motion to arbitrate. Counsel, I think we understand that. Do you want to save some time for rebuttal? You're now over your time. Maybe we should hear from Counsel. Yes, Your Honors. All right. I'll see. Thank you. Thank you, Your Honor. Andrew Pepper on behalf of Japan Airlines and with me is Stephen Agsdell, my partner. I do want to clarify one thing about the time. I'm not in any way involved in the third case today. There's three appeals. So I'm not splitting time with Mr. Osaki because we're not in that case. And we're not entirely sure why all the cases are put together today, but we're not coded. Why don't you argue the case that you're here to argue? Sure. Absolutely. Questions for Mr. Osaki. Sure. I'm here on the first two appellate numbers. I'll admit that the discussion that's been going on is a bit of a curveball because the issue, Your Honors, Japan Airlines does not have an arbitration agreement with these two plaintiffs. The reason that we're not involved in the arbitration, we've never been involved in the arbitration process, and we went the route of litigating and making motions is they have a written arbitration agreement. Japan Airlines and Jalways, my clients, do not have arbitration agreements. We're not parties to arbitration agreements. Your position is you're not the employer, right, of these former employees. Well, Your Honor, the record, we have to go with the record most favorable to the plaintiffs. They allege that we are the employer. However, they do not allege that we're party to any sort of arbitration agreement. That's a separate issue. Well, we're not here to decide whether or not you have to arbitrate, are we? We're just here to determine whether or not it was error to dismiss Japan Airlines from the case and to the extent Mr. Ventress wants to challenge venue, et cetera. Correct. So let's not waste time on whether or not you have to participate in arbitration. The district court can take that issue up as you see fit to raise it if we reinstate you to the case and reverse the dismissal order. Okay. As I understand what's on appeal, because I look at the issues presented on appeal, all that's on appeal, and it doesn't have anything to do with the transfer of venue or any of that sort of stuff that you're discussing, the transfer of venue is not on appeal. By the way, the choice of law is not on appeal. They moved to convert the case to Hawaii law. They lost that issue. They did not appeal that. That is not in their statement of issues on appeal. So while Mr. Ventress, whose pro se rambles about a lot of issues, he did not actually appeal that order. So the order refusing to convert the case from California law to Hawaii law was refused. The court in Hawaii said that California law shall apply since they filed here, and they alleged that the offenses against public policy occurred in California. So California law does apply. So where I'd like to start is that basically on the easy point, which is Mr. Crawford and Mr. Ventress both do not challenge the workers' comp portion. In other words, there's an appeal from an order that said from Judge King, you know, he double-barreled the case. He said you went on two grounds. You went on workers' comp exclusivity and you went on the treaty. They've only challenged the treaty grounds.  The panel would like to hear your thoughts. Okay. My position on the treaty is that the treaty is clear on its face. The treaty says that companies from Japan may engage personnel, certain personnel, technical experts and specialists of their choice. It is an absolute grant. It is not a conditional grant. It is an absolute grant that they have that flexibility. This is not a case brought under Title VII. This is not a case brought under the ADA. So much of the case law that's been discussed in the briefs by the plaintiffs has no applicability. This is a case of state law. State law is always going to be preempted under the Supremacy Clause when it in any way conflicts, is inconsistent or is an obstacle to the accomplishment of the purpose of a treaty. And that's where we are. We have a problem with it. Mr. Weber, didn't the district court dismiss this action based on its interpretation of the treaty clause and in essence declare that there is blanket immunity for Japan Airlines for any employment-related claims by virtue of the wording of that clause? Well, what the court found, Your Honor, was that there is blanket immunity for any employment law that frustrates or impedes or is an obstacle to the execution or accomplishment of the treaty's purposes and objectives. And the treaty's purposes and objectives, remember, you have to look back all the way to 1953 when this was passed. And the court in one of the cases we cite, the Spice case says, the animating purpose of American treaties of this purpose was to provide a stable environment for private international investment. So basically what they're saying is and what Judge King was saying is any employment law, a state employment law, not a federal employment law, a state employment law under the Supremacy Clause must always yield if in any way it impedes or interferes or puts a burden on the free investment of foreign companies that we've entered into these treaties with. Is the issue here whether the treaty simply guarantees the right to select the nationals of the foreign country for these key positions in order to protect the investment, but that the treaty recognizes that there will be essentially equal treatment between domestic companies and these foreign companies with respect to the application of all other domestic laws? No, Your Honor. I think in the title the problem with this case is that there's very sparse law when you're dealing with a state law. And all of the cases that are in the briefs have to do with a conflict between the treaty and federal law. Title VII or the ADA and the treaty. And those are laws of equal dignity. It's federal law versus federal law. So your position would be that had they alleged a Title VII claim in this case, Japan Airlines would be amenable to defend such a claim notwithstanding the provisions of the treaty? The answer actually, Your Honor, is no because I think those cases are wrongly decided, first of all. Second of all, in every one of those cases, after going through this long analysis of Title VII, in every case they harmonize it and they convert national origin discrimination and race discrimination, they call it citizenship discrimination, and they say in the end it's okay. But suppose it was based on age discrimination. Would Japan Airlines have been amenable to a lawsuit if Mr. Crawford or Mr. Ventress had alleged that the real reason that they were fired was because Japan Airlines simply decided to lay off older employees so they could replace them with cheaper younger employees? Well, the answer is no, Your Honor, but I want to make the answer is no. They would not be amenable even on the federal level, but especially on the state level. For any Title VII claim. Correct. Nothing to do with the nationality of the employee. Right, because this particular treaty is unconditional. And I want to point out something, that in the earlier cases, in 1951, if you look at the treaty, for instance, that was passed in the Greek case, the Wicks case, that says regardless of nationality, it's a grant and then it's a restriction on the grant, and it's discussed in that Wicks case. They say it's an absolute grant, but then they condition the grant. Two years later, the same guy at the State Department negotiates a treaty where they take those words out. They take out the because of nationality and they make it absolute. And in the discussion of all these treaty languages, they say there is national treatment, most favored nations treatment, and then there's the absolute grant. And the absolute grant has the purpose, Your Honor, of, and this again is from Spice, it says absolute rules were intended to protect the vital rights and privileges of foreign companies in any situation, whether or not the host government provided to indigenous companies the same protections. You mean all these Toyota plants and Nissan plants and Daimler-Benz plants in the southern United States are immune from any state law affecting labor relations? Absolutely not, Your Honor. Almost all of those plants are incorporated American subsidiaries of Toyota. So, for instance, the Horton case, which we cite, made that distinction. Toyota Motor Corporation of Japan would be immune, but Toyota Motor Corporation of North America is not. The Supreme Court was very clear that if a Japanese company incorporates an American subsidiary, they're not protected by the treaty. You have to be a branch office. You have to be a true Japanese company to be protected. The other point I'd like to make is. Well, these two plaintiffs were working for what appears to be, on paper anyway, some kind of a subsidiary. It's a separate corporation. But it's a Japan corporation. It's incorporated in Japan. It's not Japan Airlines America. It's an incorporated Japanese subsidiary. In the Evagliano case, the Supreme Court case says only if you incorporate an American subsidiary. They make a distinction between branch and subsidiary. A Japanese subsidiary is called a branch. An American incorporated subsidiary is called a subsidiary. And that's in the Evagliano case. Doesn't your position go further than what we understand from the history of the treaty? It was intended to protect. And the purpose being to protect the investment by granting, in this case, the Japanese company, the privilege of filling key positions in the company with its own nationals, notwithstanding any preferential hiring laws, federal or state, that might otherwise attend to the hiring of people in the United States. But beyond that, they don't get any extra privileges. If they're going to be competing, as I assume Japan Airlines does, with domestic American Airlines, they're going to be susceptible to the same laws, as long as it doesn't have to do with the filling of these key positions as any other company doing business in the United States. Your position seems to be to say, no, they get a leg up. They get an extra benefit that's not available to any competing domestic company. No, Your Honor. And I'd like to just quickly, Judge Goodwin's question about Toyota. This isn't for all employees. It's for a very narrow band of senior executives and specialists. These guys aren't senior executives. Well, they're specialists, though. They're technical experts. That has not been challenged on appeal. They've acknowledged that they are technical experts. I think Mr. Ventress has some dispute with that. But answering Judge Tomlin's question, I don't think these statutes, Your Honor, were intended to institutionalize racism. What you're proposing is that a company can only protect its interests, its private investment in America, if they use people of their own race from their own country. No, no, no. It gives them the right to do that. If they wish, they don't have to put Japanese nationals in those positions. They can hire American pilots if they wanted to. If they wanted to. But beyond that, they don't get any special exemption from any other laws that would otherwise pertain, whether they be labor and employment laws or tax laws or court laws, whatever it might be. The treaty doesn't address any of that, does it? Judge, this is only in the narrow area of the employment of these people at the top tier of the company. And the answer is, yes, they do get a special relationship with this country. The whole point of this was to exempt them from the constantly evolving, constantly changing rules that our company has for indigenous companies. In the area, in other words, if they do what Judge Beazer is saying is hire an American, you're conditioning their choice. You're violating their absolute right of choice if you say if you hire an American, you're going to have to submit to things like whistleblower laws. Because if that's the case, they're not going to hire Americans. They're going to only hire Japanese citizens who apparently the plaintiffs and some courts have said they would be completely immune from American law. If you go and hire a Japanese citizen, and that certainly is Mr. Crawford's vehement position, that if we just replace them with Japanese citizens, we're home free. That's institutionalizing racism. But more importantly, it's institutionalizing a conditioning of choice. Because we might not want to hire Japanese. We might decide, like the problem I'm having is, I think the law draws a distinction between the initial filling of the position and then the subsequent liability that otherwise attaches to all employees that doesn't have anything to do with nationality or race. And you're trying to say, no, no, it's much broader than that. For these key positions, not only can we choose anyone we wish, whether they be Japanese nationals or Americans, but once they fall into this category, the company is blanketly immune from the application of any other laws that would otherwise attach to the company. No, any law, Your Honor, that would impinge upon the choice. And what you're proposing, Your Honor, is that once they're in the position, then they're subject to basically lock-in. And what the Korean Airlines case pointed out was that the right to employ or to engage, is what the treaty says, is the right to disengage. That nobody intended in 1953 that you had one clean shot. You could employ all the people you wanted, however you wanted to select them, without regard to American law. And then after you selected them, you were locked in. And any change in terms of termination or disengagement of that employee would somehow fall into the maw of American law. Again, remember, the intent of this was to protect Japan from being subject to situations that would change. In other words, and if you go all the way back to 1821, to the Isabella case we cite, they say that sometimes treaties result in what they call imperfections and difficulties. That when you're dealing with a foreign country and you make a deal so that you have, you know, here, friendship, commerce, and navigation, that sometimes in achieving friendship and commerce and navigation, you yield some rights. And that leads to imperfections and difficulties. And I know the Court is sitting in 2007 and trying to apply the fairness and the sense that everybody deserves a remedy and everybody gets their day in court. No, I think what we're trying to do is we're trying to figure out what the intent was behind the treaty in order to interpret the scope of the language. Okay. The intent, as I understand it, again, the animating purpose is described in the case law, was to provide a stable platform for international private investment. And to do that, what they wanted to do was allow at the senior level, again, they're not running rampant in this country, they're not treating blue-collar workers wrong, they're not engaged in child labor violations. There are a few CEOs who would be a child labor situation. Is that when you've got your CEOs, your attorneys, your accountants, and certain specialists, technical people you need to run a technical company, pilots and flight engineers in this case, at that level, indeed, they do have special rules. At that level, a Japanese company has the right to engage who they want and to disengage and not get tangled up in American law. And that's very, very important, Your Honor, because otherwise you don't want a situation, this Court does not want to create a situation where after you make a ruling, Japanese companies say to themselves, the only way to stay out of the tangle of American law is to send Japanese citizens out to run our companies. And to answer Judge Goodwin, is that really what the treaty should be meant to say? And do you want all the Westerners who are hired as senior executives in these Japanese companies basically terminated in favor of Japanese nationals? I don't think that's appropriate. Okay. Counsel, I'd let you run on. Yes. And I will give Mr. Osaki a chance, if he has any points that he would like to make. Thank you, Your Honor. Thank you, Your Honor. The issue that involves Hawaii aviation is singular and very narrow, and it only involves the propriety of the district court's order denying a tardy motion for reconsideration. Three points.  On the motion for reconsideration, the district court was correct in denying it. But before that, there are two other questions. One is whether that order was even appealable, because the district court case as to Mr. Ventus is stayed. Well, if we granted the relief that Japan Airlines is requesting, wouldn't you have the opportunity to refile your motion to amend? Because essentially the district court denied it on the grounds that it was moot. I'm sorry. Did I misunderstand the record? Maybe I'm not following your point. No. My motion, Hawaii Aviation's motion, was a motion to compel the arbitration. Oh, I'm sorry. Okay. But that's not appealable. That's not appealable. Right. That's not appealable. And so you're going forward with the arbitration at this point. Correct. With or without Japan Airlines. Correct. We don't have to decide that today. Right. I think that's my point that I made in the brief, that the appeal is premature. And one further step, within the past month and a half, the issue that Mr. Ventus raises is moot, because the arbitrator, well, back up, Mr. Ventus in his brief notes that Magistrate Judge Kobayashi didn't decide anything about the commercial rules, simply that the arbitration should proceed according to the arbitration clause. That's all she said. In the AAA arbitration, an arbitrator has been appointed, and the arbitrator has applied the commercial rules, and by virtue of a 1995 amendment, Rule R1. Okay. But that issue is not before us. No, no, no. Okay. If we don't have jurisdiction, then you're done. Yes. And can I make the point, though, Your Honor? Go ahead. I think the point is he, the arbitrator applied the employment rules by virtue of a rule in the commercial rules. When that happened, I asked Mr. Ventus, I said, your beef with what the district court did is moot now. Please dismiss this appeal so we can save costs. And he wouldn't have to fly to Pasadena. Yes. Okay. And he wouldn't do that. So here I am. Very well. Thank you, Mr. Osaki. I appreciate the clarification. Thank you. All right. Oh, and I would like to get at least my costs on this. Okay. You file a cost bill in accordance with the rules, and the clerk will give it attention. If you don't like what you get from the clerk, we'll hear from you. Thank you. Thank you, counsel. Yes, Your Honors. I'd just like to point out what Mr. Pepper said about amending the complaint. I don't believe that's true in the record, because if you look at plaintiff's excerpts of record, the order severing defendants, Japan Airlines, October 20, 2004, that's our excerpts of record. And that's at page 48. Forty-eight of the plaintiff's excerpts on appeal says, Plaintiffs proceeding with different counsel after transfer filed a motion to amend the change of California laws to equivalent Hawaii law claims, but that motion was denied by United States Magistrate Judge Leslie Kobayashi. Although an appeal from Judge Kobayashi's order was filed and is pending, as well as a motion for Judge Kobayashi to reconsider if the incident motions are denied, the matters are now moot, given the court's ruling on Japan's airline regarding the FCN treaty. So if this case is remanded back to the Hawaii district court, the plaintiffs would be entitled to amend the complaint to Hawaii law because there was an issue of mootness, and if the case is reinstated, the mootness is no longer applicable, and then we would be able to rechallenge the motion to amend. But again, that would be a decision for the district court to revisit. Yes. I just wanted to clarify. Thank you, Mr. Lee. And just one other thing, Your Honor. In even the choice of law says it is in the record Hawaii. Hawaii choice of law, right, in the arbitration. That's under the employment agreement with HACS, right? Yes. We read it. Okay. I think we understand your position. Thank you. I've let you both go well over your time. Yes. Thank you. The case just argued is ordered, submitted, and we've also ordered the clerk to call him and release him. Oh, yes. Ms. Rell, if you would call Mr. Ventress and let him know that the argument is over, we don't have any questions for him. All right. Thank you. Thank you. The next six cases on the calendar have previously been ordered, submitted on the briefs, and we will hear argument in the case of George Wenzel v. Richard Early.
judges: Goodwin, Beezer, Tallman